**Christian PEREZ, Appellant,**

v.

**Michael GROOSE, Appellee.**

No. 91–3011.

United States Court of Appeals, Eighth Circuit.

Submitted July 31, 1992.

Decided Aug. 21, 1992.

Robert John Linhares, St. Louis, Mo., for appellant.

Frank A. Jung, Jefferson City, Mo. (William L. Webster and Frank A. Jung, on the brief), for appellee.

Before McMILLIAN, JOHN R. GIBSON and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Christian Perez appeals from the final judgment entered in the District Court [1] for the Eastern District of Missouri denying his 28 U.S.C. § 2254 habeas petition. For reversal, Perez argues his conviction for first degree assault for hitting Randy Jones in the head with a tire iron was not supported by substantial evidence. For the reasons discussed below, we affirm.

At trial, Jones, a self-employed owner of a guttering business, testified that on July 12, 1986, he went to The Place, a bar in Perryville, Missouri, to meet Christian Perez. Jones was providing Perez with room, board, and employment, and had told Perez previously that he was not doing satisfactory work. On that day, Jones tried to tell Perez that he could no longer afford to pay him, though he did not tell Perez he was fired, and that Perez was basically begging for his job. They sat at the bar for about three hours, talking and drinking heavily. At the bartender's behest, Jones left with Perez at approximately 5:45 p.m. · Jones testified that when they got to Jones's truck, Jones refused Perez's request for money. Perez got angry and demanded some money. Jones replied that he would not give Perez money until Perez repaid him the $200 he had previously loaned him. Jones then told Perez he could no longer work for him. Perez became enraged and managed to grab Jones's wallet, and the two men scuffled. Jones testified he next remembered pulling himself into a sitting position against a brick wall, and then lying in the seat of his truck with his head against the passenger door rest. He could see Perez out the driver's window, throwing what appeared to be an L-shaped tire iron into the bed of the truck. He had no recollection of Perez striking him in the

1. The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Catherine D. Perry, United States Magistrate Judge for the Eastern District of Missouri.

head with a tire iron or any other object. Jones's next recollection was waking up in a hospital sometime in August.

On cross-examination, Jones stated that he talked to several law enforcement officials after he regained consciousness. In a recorded statement he gave to police four months after his injury he did not mention that Perez had taken his wallet; he stated that he had "visions of what happened", at one point he "got the best of" Perez during their fight, he could not actually remember being hit with a tire tool, and he did not remember leaving The Place with Perez. Jones further testified that Perez returned his wallet to his sister with $230 missing.

Dr. Yong Kie Kim, a neurosurgeon, testified that on July 12 Jones was brought to the hospital comatose. The injury was on the top of his head, particularly the front part of the forehead; it was a fracture of the skull and the skull was depressed; the skull had been forcefully hit, causing the hemorrhage inside his skull. The large vein that travels on top of the head had ruptured, causing an epidural hematoma. The triangular depressed area of the skull was on the top along the fracture line crossing from right to left. Dr. Kim stated that the depression fracture would not have resulted from a simple fall, and Jones's injuries were not consistent with injuries caused by falling backwards and striking the back or crown of the head. Dr. Kim stated that to strike the top of one's head in a fall, one would have to fall head first from, e.g., a two-story building or a tree limb. Dr. Kim stated that it would be impossible for a man to run backwards, flip, and land on the part of the head at which Jones's injury was located. He did not see any other indications that Jones had been in a fight, such as bruises, torn or soiled clothes, black eyes, or blood. In his opinion, the point of impact usually is the depressed area.

The investigating officer testified that he found a tire iron in the bed of Jones's pickup truck, and that on July 14, Perez told him that Jones fell backwards and hit the crown of his head on the street. Gary Ruebke testified that he was in The Place when Perez came in asking for help. With three or four others, Ruebke went outside and saw someone help Jones out of the truck and walk to the back of the truck. Jones said something, walked to the parked car next to the truck, and then stumbled backwards out to the street and fell down on his back and the back of his head. Another person helped Perez pick Jones up and put him in Perez's car. After getting directions to the hospital, Perez drove off with Jones. Perez came back wanting help to get his car out of a ditch. Ruebke went with Perez in Jones's truck and found Perez's car three miles away in a ditch. They pulled the car out of the ditch, and Ruebke, in the truck, followed Perez to the hospital. After searching the truck and Perez's car, Ruebke found Jones's wallet in the visor of Perez's car.

Two other witnesses testified that they saw Perez enter The Place asking for help to get Jones out of the truck. One of the witnesses and Perez shook Jones; Jones woke up; they helped Jones out of the truck; Jones walked around the truck slowly; and Jones said he was all right. After Jones got to the back of the truck, he began walking backwards and fell back. He hit the back of his head and his head bounced six or eight inches off the ground. They did not see Perez and Jones quarrel at the bar.

The state rested its case, and the court denied Perez's motion for judgment of acquittal. The defense then put on its evidence. Dr. Robert Woolsey, a neurologist who reviewed Jones's medical records, testified that in a lineal fracture, like Jones's, the impact was probably somewhere along the line of the fracture. Jones's injuries were consistent with any type of force coming directly down on top of his head or with his falling on top of his head. He also stated that he found no evidence of two skull fractures, one from a fall and one from a blow to the head. On cross-examination, Dr. Woolsey stated that the operative notes did not indicate there was a depression as Dr. Kim had testified. Dr. Woolsey stated that in light of the testimony of a depression, the impact was probably where the depression was.

The bartender at The Place testified that Jones drank nine drinks that afternoon. She did not hear any harsh words between Jones and Perez. Five other patrons at The Place testified that Jones was drunk and that Jones and Perez were not arguing or fighting. Richard Post, Perez's friend, testified that he saw Jones sleeping in the truck. Post nudged Jones and Jones woke up. Jones got out of the truck and leaned over against the bed of the truck. He could tell Jones had been drinking. Jones asked for a cigarette and smoked part of it. As Post started to leave, he saw Jones walk around to the back of the truck, holding onto the bed. When he got to the back of the truck, Jones began losing his balance and stepping backwards down the hill. As he fell, Jones's head whipped back, and the portion of his head towards the back hit the highway. David Hoff also described Jones's fall. He testified that as Jones stumbled back, his feet went out from underneath him; when his head hit the ground, his feet were two feet off the pavement. The back portion of the top of his head hit the pavement. As his body hit the ground, his head bounced and hit the ground a second time.

Perez, age 31, testified that he had known Jones since childhood, and Jones was his friend. Perez had two prior felony convictions for possessing an unregistered firearm and a firearm with an altered serial number. At The Place, he drank at least four shots of tequila and a beer. After Jones was asked to leave the bar, they did not have a confrontation, Perez did not remove a tire tool from Jones's pickup truck, and he did not strike Jones with anything. Perez testified that after he took Jones out of the truck, Jones leaned his chest against the truck and then moved four steps backwards before falling back head first. His head hit before the rest of his body. After Jones fell, a man placed Jones in Perez's car and tried to give Perez directions to the hospital. Perez mistakenly drove past the hospital; when he got to the edge of town, he attempted to make a U-turn and landed in a ditch. He got out of the car and hitched a ride into town. Ruebke and he took Jones's truck and pulled the car out of the ditch. Perez drove to the hospital. Perez had Jones's wallet because it fell out of Jones's pocket when they picked him up off the ground and placed him in his car. He put it in the visor of his car and gave it to Jones's sister the next day with Jones's truck keys. Perez denied taking any money from the wallet. After the defense rested its case, Perez's counsel again moved unsuccessfully for judgment of acquittal.

The jury returned a guilty verdict. The court sentenced Perez as an habitual offender to thirty years imprisonment. Perez filed a direct appeal and a Rule 29.15 motion for postconviction relief. The postconviction motion was denied, and the appeal of the denial was consolidated with the direct appeal. Concluding there was sufficient evidence to submit the case to the jury, the Missouri Court of Appeals affirmed the conviction. *State v. Perez*, 768 S.W.2d 224 (Mo.Ct.App.1989).

Perez filed this § 2254 habeas petition, claiming his conviction was not supported by substantial evidence. The State argued that based on the Missouri Court of Appeals determination that the evidence was sufficient, the claim was without merit. The magistrate judge determined that the Missouri court's decision was entitled to deference by the federal court. *See Haymon v. Higgins*, 846 F.2d 1145, 1146 (8th Cir.1988). Concluding that the state court decision was factually supported by the record, the magistrate noted:

> The court found that although the evidence showed that the skull fracture suffered by the victim could have been caused by his fall, the uncontradicted testimony presented by both testifying doctors was that the depression on the victim's forehead was almost certainly the point of impact. Therefore, the fall could not explain the injury because the victim landed on the back of his skull and did not strike the front. When the medical facts are combined with the fact that petitioner was the only person alone with the victim during the period that the injury could have occurred, a strong in-

ference arises that petitioner caused the victim's injury.

Adopting the magistrate judge's report over Perez's objections, the district court denied the habeas petition.

On appeal Perez argues that the circumstantial evidence of guilt was insufficient to allow the case to be submitted to the jury. He argues that the test for sufficiency of circumstantial evidence, set forth in *State v. Luna*, 800 S.W.2d 16, 19 (Mo.Ct. App.1990), was not met, and that his hypothesis of innocence—that Jones's injuries resulted from his fall—was reasonable and more consistent with the facts.

 The federal constitutional standard for determining the sufficiency of the evidence was established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (*Jackson*). The standard is whether, after assessing the evidence in the light most favorable to the prosecution, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319, 99 S.Ct. at 2789.[2]

Having carefully reviewed the record, including the trial transcript, we conclude that there was sufficient evidence presented for a rational trier of fact to have found proof of guilt beyond a reasonable doubt in this case. Contrary to Perez's contention, the prosecution is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Mason v. Lockhart*, 881 F.2d 573, 575 (8th Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989).

In this case, the medical expert testimony was very damaging. Both experts testified that the depression on Jones's head was the likely place of impact. Although the doctors testified that Jones's injuries could have resulted from a certain type of fall, that was not the kind of fall the other witnesses observed. It was for the jury to resolve any conflicting inferences concerning Jones's intoxication, Perez's actions after Jones fell, Jones's wallet, and the lack of evidence or testimony of a fight. A federal habeas court must presume that the trier of fact resolved any conflicting inferences in favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. We conclude that a rational jury could have found all the essential elements of the crime from the evidence presented at trial.

Accordingly, we affirm the district court's order denying habeas relief.

---

**2.** This past term in *Wright v. West*, —— U.S. ——, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), the Supreme Court discussed, but did not resolve, whether the state court's application of law to fact was entitled to a de novo or a deferential standard of review in determining the sufficiency of evidence. As in *Wright*, the issue need not be resolved here because, under either standard, there was sufficient evidence.