### Michael J. KNIGHT, Petitioner,

### v.

### Frank X. HOPKINS, Respondent.

### No. 4:CV92–3057.

United States District Court,
D. Nebraska.

July 2, 1993.

Michael J. Knight, pro se.

Mark D. Starr, Atty. Gen., Marilyn B. Hutchinson, Nebraska Dept. of Justice, Lincoln, NE, for defendant.

Donald B. Stenberg, Atty. Gen., Lincoln, NE.

### MEMORANDUM AND ORDER ON REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

URBOM, Senior District Judge.

The remaining issue is whether there was sufficient evidence at the trial to support a verdict of guilty on the charge of conspiracy to commit first degree murder. The magistrate judge found that there was and has recommended denial of the petition for a writ of habeas corpus.

■ The evidence presented at the trial was clearly adequate to permit a reasonable jury to conclude beyond a reasonable doubt that the petitioner conspired to commit first degree murder. His principal argument now is that there was no overt act committed. The magistrate judge has carefully analyzed the argument and, because state law determines the elements of an offense and what constitutes an overt act, the magistrate judge concluded that there was at least one overt act. I agree.

■ For the first time the petitioner in his objection to the report and recommendation of the magistrate judge has asked for appointment of counsel. I shall deny that request. Counsel must be appointed for an indigent federal habeas petitioner only when the interests of justice or due process require it. *Schultz v. Wainwright,* 701 F.2d 900, 901 (11th Cir.1983); *Giarratano v. Murray,* 847 F.2d 1118 (4th Cir.1988) (reversed on other

grounds 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1).

IT IS ORDERED that the objection to the report and recommendation of the magistrate judge, filing 25, is overruled, including the request for appointment of counsel.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Referred to me for consideration is the petition for writ of habeas corpus filed by Michael J. Knight. For reasons discussed more fully below, I shall recommend the writ be denied.

Under attack is petitioner's conviction for conspiracy to commit first degree murder; he was sentenced to serve 10 to 15 years in prison. Petitioner's conviction was upheld on direct appeal. See State v. Knight, 239 Neb. 958, 479 N.W.2d 792 (1992). Petitioner then filed a pro se petition and amended petition for writ of habeas corpus in this court challenging his conviction on the following grounds: (1) the indictment was insufficient; (2) the evidence presented was insufficient to support the verdict; and (3) the court did not permit full cross-examination of one of the states' witnesses.[1] Respondent was required to answer the insufficient evidence claim. (Filing 15). This claim is the sole issue remaining for consideration. In filing 6, I concluded this claim had been properly presented to the Nebraska Supreme Court.

## INSUFFICIENT EVIDENCE

Generally, the state sought to prove that petitioner was involved in a conspiracy to kill Kevin Loper. Petitioner spoke with Mickey Koss about killing Loper. Koss spoke with police officers who arranged to have an undercover officer, Greg Sorensen, pose as a "hit man" named Bill. Sorensen spoke with petitioner three times over the telephone regarding plans to carry out the murder. Petitioner alleges that the State failed to present sufficient evidence of an "overt act" to support the conviction for conspiracy to commit first degree murder. When considering a challenge to the sufficiency of the evidence claim, this court must consider:

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial establishes guilt beyond a reasonable doubt." [citation omitted] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (footnote omitted) (quoting *Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966) (emphasis added)). *See also Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir.1993); *Ward v. Lockhart*, 841 F.2d 844, 846 (8th Cir.1988).

The question of whether sufficient evidence was presented at trial to satisfy due process is a mixed question of law and fact. The United States Supreme Court recently discussed, but did not resolve, the question of whether the state court's application of law to facts in determining the sufficiency of evidence is entitled to a de novo or a deferential standard of review. *Wright v. West*, —— U.S. ——, 112 S.Ct. 2482, 2486–91, 120 L.Ed.2d 225 (1992); *see Perez v. Groose*, 973 F.2d 630, 634 n. 2 (8th Cir.1992). As in *Wright* and *Perez*, the standard of review will not affect the outcome of the decision.

The claim of insufficient evidence to support a conviction raised in a habeas corpus action is reviewed as a due process claim. *Smith v. Armontrout*, 888 F.2d 530, 538 (8th Cir.1989). The law to be applied is that of the state in which the conviction was obtained. *Becker v. Lockhart*, 971 F.2d 172 (8th Cir.1992) (applying Arkansas law); *Wilkins v. Iowa*, 957 F.2d 537, 542 (8th Cir.1992) (applying Iowa law); *Williamson v. Jones*, 936 F.2d 1000, 1003 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 901, 116 L.Ed.2d 802 (1992) (applying Minnesota law).

---

1. In filing 14, Judge Urbom ordered that petitioner's first and third claims be dismissed.

The Nebraska Supreme Court stated that to show a conspiracy, the state must prove that the accused:

> [(a)] agrees with one or more persons that they or one or more of them shall engage in or solicit the conduct or shall cause or solicit the result specified by the definition of the offense; and (b) He or another person with whom he conspired commits an overt act in pursuance of the conspiracy.

*State v. Knight,* 239 Neb. at 962, 479 N.W.2d 792, citing *Neb.Rev.Stat.* § 28–202(1). Petitioner does not challenge the sufficiency of the evidence presented to demonstrate that the agreement element of the crime was satisfied; he claims only that the state presented insufficient evidence of an overt act committed in pursuance of the conspiracy.

Regarding this claim, the Nebraska Supreme Court on petitioner's direct appeal stated:

> The testimony that appellant initiated conversations about "offing" Kevin Loper and his participation in three telephone conversations with "Bill" about his plan and specific instructions to assist in bringing the plan to fruition provide sufficient evidence of overt acts to sustain the conspiracy conviction.

*Id.* Thus, the Nebraska Supreme Court found that petitioner initiated conversations regarding the killing, participated in conversations setting forth petitioner's scheme to carry out the killing, and provided an individual with specific instructions regarding how to carry out the plan. The court determined that such actions constituted overt acts in furtherance of the conspiracy.

Viewing the evidence in the light most favorable to the prosecution, the following facts were proved at trial. Petitioner and Koss met in the Lancaster County Jail. (B.E. 86:2–8). Petitioner initiated a conversation with Koss regarding having Loper "offed," (B.E. 90:6–13), and asked if Koss knew of anyone who could do the job. (B.E. 90:20–21). Koss contacted the police and told officer Daniels of petitioner's statements.

(B.E. 91:12–13, 21–23). Officer Kansier instructed Koss to call a telephone number at a specified time and ask for "Bill." (B.E. 94:25–95:10). Koss told petitioner that a person named Bill would be willing to do the job. (B.E. 95:25–96:6). Koss called the number and gave petitioner the telephone; petitioner talked to "Bill" for 10–15 minutes. (B.E. 99:15–24, 103:7–11).

Officer Sorensen testified that he was assigned to act as a hired killer named Bill. (B.E. 220:3–5). He received the call from Koss and talked to petitioner about killing Loper. (B.E. 220:12–17). The call was recorded and the tape was played for the jury. (B.E. 245:12–13). Sorensen had a second telephone conversation with petitioner. That conversation was recorded and played for the jury. (B.E. 250:22–23). Petitioner placed a third call to Sorensen. (B.E. 253:12–21). The conversation was recorded and played for the jury. (B.E. 256:1–2).

The transcripts of the recordings [2] reveal that petitioner provided the purported hit man with a great deal of detail regarding the intended victim and how to carry out the murder. Petitioner told "Bill" the identity of the victim, (Ex. 1 at 4:13–14), how to get to Loper's apartment (Ex. 1 at 6:12–13), how to most easily get inside the apartment (Ex. 2 at 2:1–6), and its layout (Ex. 2 at 3:24–4:7); Loper's place of work (Ex. 1 at 6:26–27) and work hours (Ex. 2 at 2:7–8); Loper's physical description (Ex. 1 at 6:29–30) and automobile description (Ex. 1 at 8:1–7; Ex. 2 at 2:8–17); when Loper would be alone (Ex. 1 at 7:18–31) and how to otherwise get him alone (Ex. 2 at 3:18–21); amount of payment (Ex. 1 at 8:29–33); how the payment would be completed; and how Bill would get petitioner the message that Loper had been killed (Ex. 1 at 8:17–28; Ex. 3 1:12–2:18).

Petitioner does not deny that this evidence was presented at trial. Nor does he deny that the evidence is true. (Pet.Br. at 4). Petitioner cites to numerous parts of the record containing testimony that petitioner took part in conversations regarding the plan

---

**2.** The transcripts of the three conversations are included in the state court records as exhibit 6 to the Bill of Exceptions. In this Report and Rec-

ommendation, they will be referred to as Bill of Exceptions Exhibits 1, 2 and 3, respectively.

with coconspirator Mickey Koss, as well as with "Bill." (Pet.Br. at 3–9). Petitioner's position is that involvement in a conversation may not be construed as an "overt act." He alleges that because neither Koss or "Bill" took any steps to kill the intended victim, the conversations petitioner was involved in regarding the killing could not be construed as "overt acts."

The question of what may constitute an "overt act" under Nebraska law is undeniably a question of state law. "A state court's interpretation of state law is binding upon a federal court in a habeas proceeding." *Williamson v. Jones*, 936 F.2d at 1004. As respondent correctly points out, no federal law or constitutional protection requires that a state include an "overt act" requirement in its conspiracy statute. *Hogan v. O'Neill*, 255 U.S. 52, 55, 41 S.Ct. 222, 223, 65 L.Ed. 497 (1920). The Nebraska Supreme Court has addressed the description of an overt act on a number of occasions:

> In *State v. Copple*, 224 Neb. 672, 692, 401 N.W.2d 141, 145 (1987), we stated:
>
>> An overt act manifests that the conspiracy is "still at work." [Citation omitted]. Also, an overt act, as something done pursuant to a conspiracy, tends to show a preexisting conspiracy and manifests an intent or design toward accomplishment of a crime.... An overt act, by itself, need not have the capacity to accomplish the conspiratorial objective and does not have to be a criminal act.

*State v. Lafler*, 225 Neb. 362, 373–74, 405 N.W.2d 576 (1987).

The Nebraska Supreme Court has interpreted the state's conspiracy statute in such a manner that conversation alone may be an overt act. *See State v. John*, 213 Neb. 76, 96, 328 N.W.2d 181 (1982) (defendant who sought out a "hit man" to kill defendant's wife performed overt acts by, *inter alia*, meeting with the "hit man," providing description of wife's physical appearance and automobile, and presenting itinerary of wife's vacation); *State v. Copple, supra* (silence may be an overt act); *State v. Dent*, 198 Neb. 110, 251 N.W.2d 734 (1977) (coconspirators

meeting to discuss plans is an overt act). More importantly to this action, the Nebraska Supreme Court determined that petitioner's conversations with Koss and Bill were overt acts in furtherance of the conspiracy. *State v. Knight*, 239 Neb. at 962, 479 N.W.2d 792. As a matter of interpretation of state law, such determinations are binding on this court. *Williamson, supra.*

Petitioner apparently desires this court read into the state statute a provision that unless Koss or "Bill" actually did something in furtherance of the plans, petitioner could not be convicted of conspiracy. Petitioner's brief centers around the argument that mere conversation with Koss and "Bill" could not constitute overt acts because neither Koss nor "Bill" intended to do anything to carry out the object of the conspiracy. (Pet.Br. at 9–10). While petitioner cites various federal decisions [3] and Black's Law Dictionary to bolster his position, none of the cases cited bears upon the all important definition of "overt act" in this case—that being the definition given by the Nebraska Supreme Court.

To the extent petitioner claims the conspiracy charge requires Koss or "Bill" to have intended to actually carry out the conspiracy, his claim is without merit. The Nebraska Supreme Court foreclosed that claim stating the conspiracy statute requires no such proof.

> With Nebraska's adoption of § 28–202, there came a shift from a bilateral approach to conspiracy to a unilateral approach.... Under the present scheme, which follows the Model Penal Code's interpretation of conspiracy, the fact that none of the "coconspirators" at any time planned to follow through with the plan has no impact on the culpability of the appellant.

*State v. Knight*, 239 Neb. at 962, 479 N.W.2d 792.

I conclude the evidence presented at trial, when viewed in the light most favorable to the state, *Jackson, supra*, overwhelmingly demonstrates that petitioner entered into an agreement with another person to kill Kevin

---

**3.** None of the cited federal cases applies Nebraska law.

Loper. Further, petitioner carried out at least one "overt act" as defined by Nebraska Law, in pursuance of the conspiracy by providing detailed descriptions of the intended victim, the victim's automobile, apartment and work schedule, and by initiating a telephone call to the purported hit man in which payment terms and methods were arranged. Petitioner's claims that these conversations may not constitute an "overt act" are not supported by state law. Applying the *Jackson* standard, I conclude petitioner's conviction did not violate due process. Accordingly, I shall recommend the writ be denied.

IT THEREFORE HEREBY IS RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B) that this petition be denied.

The petitioner is notified that unless objection is made within ten days after being served with a copy of this recommendation, he may be held to have waived any right he may have to appeal the court's order adopting this recommendation.

Dated April 19, 1993.