38 F.3d 953
 66 Fair Empl.Prac.Cas. (BNA) 97,
18 Employee Benefits Cas. 2195
William J. HOUGHTON; Robert W. Williams; Raymond L. Reid,
Jr.; Patricia Mary Johnson; Arthur VanRyswyk;
Frances V. Allott; William R. Grant;
Cecil Cooper, Plaintiffs-Appellees,
v.
SIPCO, INC., formerly known as Swift Independent Packing
Company; Monfort, Inc., Defendants-Appellants.
 No. 93-3551.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1994.
Decided Oct. 13, 1994.
Rehearing Denied Nov. 29, 1994.
 
 William H. Bruckner, Houston, TX, argued (Sylvia Davidow, on the brief), for appellants.
 Stephen DeVolder, Des Moines, IA, argued (Terrence Brown and J. Russell Hixon, on the brief), for appellee.
 Before LOKEN, Circuit Judge, FRIEDMAN* and JOHN R. GIBSON, Senior Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 This is an action by eight former and present salaried employees of SIPCO, Inc., alleging that SIPCO and its sister company, Monfort, Inc. (collectively, "SIPCO"), violated the Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001 et seq. ("ERISA"), and the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 ("ADEA"), by reducing plaintiffs' compensation and retirement medical benefits and denying them severance pay. Following jury verdicts in plaintiffs' favor, the district court entered judgment awarding damages and equitable relief. Concluding that the ERISA claims were improperly submitted to a non-advisory jury, and that other errors infect the ADEA verdicts, we reverse.
 
 
 2
 I. Background.
 
 
 3
 Our opinion in Jensen v. SIPCO, Inc., 38 F.3d 945 (8th Cir.1994), also filed today, contains relevant background information concerning SIPCO, its retirement medical benefit plans, and plaintiffs' ERISA claims. We refer the reader to Jensen for that background.
 
 
 4
 Prior to 1984, SIPCO's salaried employees were eligible under Plan 1006 for retirement medical benefits if they retired with ten years of credited service. On January 1, 1984, SIPCO adopted Plan 1017, which required twenty years service to be eligible for retirement medical benefits. All of the plaintiffs began working at SIPCO before 1984 and continued in SIPCO's employ under Plan 1017. Though some plaintiffs allege in this lawsuit that the increased years-of-service eligibility requirement of Plan 1017 violated their ERISA rights, they did not challenge this benefits change when it was adopted in 1984.
 
 
 5
 In February 1988, after Conagra had placed SIPCO under Monfort's management, SIPCO announced that employee salaries and benefits would be changed in order "to place [Monfort and SIPCO] employees under a uniform salary and benefits policy." In March, SIPCO's salaried employees began receiving Monfort's package of employee benefits, resulting in the elimination of some benefits and reductions in others. In April, the compensation levels of many SIPCO employees were reduced, and some received new job assignments. All eight plaintiffs incurred significant salary reductions, and four were reassigned or demoted. Plaintiffs Reid and Johnson resigned from their jobs in April and May 1988, following these salary reductions.
 
 
 6
 In late 1988, SIPCO announced that Plan 1017's retirement medical benefits would not be available to employees who retired after March 1, 1989. Plaintiffs Allott, Williams, and Grant, who had more than twenty years of service, retired before March 1, 1989 in order to receive retirement benefits under Plan 1017. Plaintiff Cooper, who had more than twenty years of service but was too young to retire, left SIPCO in November 1988 for a new job. Plaintiff Houghton, who did not have twenty years service, resigned in June 1989. Plaintiff VanRyswyk continued in SIPCO's employ. SIPCO refused to pay severance pay to the seven plaintiffs who left.
 
 
 7
 Plaintiffs then commenced this action, claiming that SIPCO violated ERISA by depriving them of severance and retirement medical benefits, and violated ADEA by imposing discriminatory changes in their compensation and employee benefits. Plaintiffs demanded a jury trial. Following the trial, over SIPCO's objection all claims were submitted to the jury. On the ERISA claims, the jury found (i) that the five plaintiffs who did not retire are entitled to lifetime retirement medical benefits under Plan 1017, and (ii) that the seven plaintiffs who left SIPCO's employ are entitled to severance benefits. On the ADEA claims challenging SIPCO's salary and benefits reductions, the jury found in favor of the seven plaintiffs who are within ADEA's protected class (over age 40) on both their disparate impact and disparate treatment claims. Based upon the jury's verdicts, the district court entered judgment awarding compensatory and liquidated damages to all plaintiffs, severance pay to seven plaintiffs, reinstatement of four plaintiffs, lifetime retirement medical benefits for five plaintiffs, and attorneys' fees. 828 F.Supp. 631. SIPCO appeals both the ERISA and the ADEA portions of this final judgment.
 
 
 8
 II. ERISA Claims.
 
 
 9
 In In re Vorpahl, 695 F.2d 318 (8th Cir.1982), we held that there is no right to a jury trial of ERISA claims. Plaintiffs in this case nonetheless demanded a jury trial of their ERISA claims, arguing that subsequent case law cast doubt on our Vorpahl decision. The district court agreed and submitted plaintiffs' ERISA claims to a non-advisory jury. This was error. As the Ninth Circuit recently held, the Supreme Court's decision in Mertens v. Hewitt Assocs., --- U.S. ----, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), confirms that there is no right to money damages or to a jury trial under ERISA. See Spinelli v. Gaughan, 12 F.3d 853, 857-58 (9th Cir.1993); see also Sprague v. General Motors Corp., 823 F.Supp. 442, 444-45 (E.D.Mich.1993). Because the district court declined to enter its own precautionary findings of fact and conclusions of law, the judgment in favor of plaintiffs on their ERISA claims must be reversed. In view of our decision in Jensen, we offer the following observations about the retirement medical benefits claims for the district court's consideration on remand.
 
 
 10
 1. The five plaintiffs who claim the right to lifetime retirement medical benefits under Plan 1017 did not retire when that Plan was in effect. As an employee welfare plan not subject to ERISA's mandatory vesting requirements, Plan 1017 could be modified or terminated at any time "absent [SIPCO's] contractual agreement to the contrary." Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir.1990); see also Meester v. IASD Health Servs. Corp., 963 F.2d 194, 197 (8th Cir.1992). The five plaintiffs claim that they relied upon SIPCO's promise to provide them vested lifetime benefits under Plan 1017. To be enforceable under ERISA, any such promise "must be reduced to writing and incorporated, in some fashion, into the formal written ERISA plan." United Paperworkers Int'l Union v. Jefferson Smurfit Corp., 961 F.2d 1384, 1386 (8th Cir.1992). Plaintiffs have the burden of proving such an agreement to vest benefits. See Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1516-17 (8th Cir.1988), cert. denied, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).
 
 
 11
 2. In Jensen, we affirmed a finding "that SIPCO in creating Plan 1006 and Plan 1017 intended that retirement medical benefits for salaried employees would vest when those employees retired." 38 F.3d at 951. Plaintiffs in this case argue a contrary theory--that their Plan 1017 benefits vested before they retired. As our discussion in Jensen makes clear, plaintiffs' theory is inconsistent with the adoption of Plan 1017 in 1984, since that Plan changed the benefits previously afforded by Plan 1006, and vested benefits may not be changed without the beneficiary's consent. Plaintiffs' theory would also leave the reservation-of-rights provision in Plan 1017 with no meaning at all, contrary to normal trust and contract principles of construction.
 
 
 12
 3. We also held in Jensen that the failure to disclose in Plan 1017's Summary Plan Descriptions that the Plan's retirement medical benefits were not vested did not violate either 29 U.S.C. Sec. 1022(b) or the Department of Labor's implementing regulations. Therefore, that non-disclosure was "neither a material misrepresentation nor a breach of the plan administrator's fiduciary duties." Jensen, 38 F.3d at 952.
 
 
 13
 4. These five plaintiffs rely heavily upon estoppel theories to support their ERISA claims for lifetime medical benefits under Plan 1017. However, an ERISA plaintiff may not use estoppel to recover money damages for reliance on an extra-contractual promise or representation. See Slice v. Sons of Norway, 34 F.3d 630, 632 (8th Cir.1994). Moreover,
 
 
 14
 ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise. See National Cos. Health Benefit Plan v. St. Joseph's Hosp., 929 F.2d 1558, 1572 & n. 13 (11th Cir.1991); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163-64 (3d Cir.1990); Moore [v. Metropolitan Life Ins. Co.], 856 F.2d at 492 [ (2nd Cir.1988) ]. See also Anderson v. John Morrell & Co., 830 F.2d 872, 877 (8th Cir.1987). SIPCO's pre-1989 SPDs may not be the basis for an estoppel--they were merely silent with regard to SIPCO's reservation of the right to modify or terminate benefits, and they expressly notified interested participants and beneficiaries that they could obtain and examine all Plan documents, as required by the Department's regulations. See 29 C.F.R. Sec. 2520.102-3(t)(2).
 
 
 15
 Jensen, 38 F.3d at 953; see also Wise v. El Paso Natural Gas Co., 986 F.2d 929, 938 (5th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993); Jefferson Smurfit, 961 F.2d at 1386. Thus, even if estoppel may give rise to an ERISA claim--an open issue in this Circuit--we fail to see how these plaintiffs may recover lifetime Plan 1017 retirement benefits under an estoppel theory.
 
 
 16
 III. ADEA Claims.
 
 
 17
 All Plaintiffs except Reid claim that SIPCO's salary and benefits reductions violated the ADEA.[1] The district court submitted both disparate impact and disparate treatment theories to the jury, which found in plaintiffs' favor on both grounds.
 
 
 18
 A. Disparate Impact.
 
 
 19
 Disparate impact discrimination occurs when an employer uses "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another," without adequate justification. International Bhd. of Teamsters v. United States, 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Prior to Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), once the plaintiff established a prima facie case of disparate impact on the protected group, the employer had the burden to prove a business necessity defense, that is, a "compelling need" to maintain an employment practice for which there was no alternative. See Kirby v. Colony Furniture Co., 613 F.2d 696, 705 n. 6 (8th Cir.1980). However, that burden was significantly lessened by the Supreme Court in Wards Cove, 490 U.S. at 659, 109 S.Ct. at 2126:
 
 
 20
 In this phase [of a disparate impact case], the employer carries the burden of producing evidence of a business justification for his employment practice. The burden of persuasion, however, remains with the disparate-impact plaintiff.
 
 
 21
 In this case, SIPCO argues that the district court erred in instructing the jury that, once plaintiffs proved a prima facie case, "defendants are entitled to show by a preponderance of the evidence that their policies were justified by reasons of business necessity." We agree that this instruction is inconsistent with Wards Cove in two respects. First, it improperly placed the burden of proof on this issue on SIPCO. Second, it required SIPCO to prove a "business necessity," rather than a "business justification."
 
 
 22
 Plaintiffs argue that business necessity versus business justification is "a semantic distinction that is devoid of substance." We disagree. There is an obvious and significant difference in the plain meaning of the two phrases. See Allen v. Seidman, 881 F.2d 375, 377 (7th Cir.1989). Under Wards Cove, "there is no requirement that the challenged practice be 'essential' or 'indispensable' to the employer's business for it to pass muster: this degree of scrutiny would be almost impossible for most employers to meet." 490 U.S. at 659, 109 S.Ct. at 2126. On the facts of this case, the jury could have concluded that SIPCO's professed reasons for reducing Plaintiffs' compensation--such as the need to equalize pay between the SIPCO and Monfort work forces--were a legitimate business justification that did not rise to the level of a business necessity.
 
 
 23
 Plaintiffs also argue that the district court properly instructed the jury in accordance with the law in effect at the time of trial and when the alleged discriminatory acts occurred. However, Wards Cove governs cases filed before the effective date of the 1991 Civil Rights Act. See, e.g., Hicks v. Brown Group, Inc., 982 F.2d 295 (8th Cir.1992) (en banc).
 
 
 24
 Jury instructions must, "as a whole, adequately and sufficiently state the law applicable to the case." MDU Resources Group v. W.R. Grace & Co., 14 F.3d 1274, 1277 (8th Cir.1994), citing Sterkel v. Fruehauf Corp., 975 F.2d 528, 531 (8th Cir.1992). The district court's business necessity instruction did not meet that standard. Therefore, there must be a new trial of plaintiffs' disparate impact claims.
 
 
 25
 B. Disparate Treatment.
 
 
 26
 Plaintiffs also claimed that SIPCO's salary and employee benefits reductions were the product of intentional age discrimination, and the district court submitted these disparate treatment claims to the jury. The jury's special verdict forms may well be hopelessly inconsistent with respect to these claims.[2] Moreover, the record leaves us uncertain whether the district court granted plaintiffs relief on the disparate treatment claims--the judgment form reveals only that judgment was entered for Plaintiffs on their ADEA claims.
 
 
 27
 Plaintiffs' disparate treatment claims also suffer from another, more serious flaw. Plaintiffs claim that SIPCO's unilateral changes in retirement medical benefits, such as the adoption of Plan 1017 in 1984 and its discontinuance in 1989, constituted disparate treatment. They further argue that those plaintiffs who took early retirement to preserve their Plan 1017 benefits were constructively discharged. As we have discussed, SIPCO reserved the right to prospectively modify its retirement medical benefit plans, and therefore such changes did not violate contractually vested rights under ERISA. An offer of early retirement by itself does not violate ADEA; it merely gives an advantage to the older employees who are eligible to accept it. See Henn v. National Geographic Society, 819 F.2d 824, 826-27 (7th Cir.1987); 29 C.F.R. Sec. 1625.9(f). For the same reason, there can be no constructive discharge liability for announcing in advance a retirement benefits reduction permissible under ERISA, and also offering older employees an early retirement option not available to younger employees. Only when older employees are treated less favorably than younger employees if they remain on the job may the offer of early retirement constitute a wrongful constructive discharge under ADEA. See Bodnar v. Synpol, Inc., 843 F.2d 190, 194 (5th Cir.1988).
 
 
 28
 The Supreme Court has cautioned that liability under ERISA and ADEA, while not always mutually exclusive, are conceptually distinct. See Hazen Paper Co. v. Biggins, --- U.S. ----, ---- - ----, 113 S.Ct. 1701, 1707-08, 123 L.Ed.2d 338 (1993). In this case, we conclude that plaintiffs pursued an overly-expansive theory of ERISA liability that tainted the submission of their ADEA disparate treatment claims to the jury. Thus, SIPCO is entitled to a new trial on these claims.
 
 
 29
 The judgment of the district court is reversed, the award of attorney's fees is vacated, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 Reid unsuccessfully asserted an age discrimination claim under Iowa law, a claim that is not before us on appeal
 
 
 [2]
 The jury found that willful age discrimination was a motivating factor in SIPCO's decisions to reduce plaintiffs' salaries and benefits, but that SIPCO would have made those decisions regardless of age. The latter finding would seem to preclude disparate treatment liability. See Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794, 104 L.Ed.2d 268 (1989); Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir.1991). Standing alone, this would probably not be reversible plain error. See Hicks v. Brown Group, Inc., 902 F.2d 630, 655 (8th Cir.1990)