Victor HENKIN, et al., individually and on behalf of all those similarly situated, and on behalf of the AT & T Voluntary Retirement Incentive Program and the AT & T Management Pension Plan, Plaintiffs,

v.

AT & T CORPORATION, and the AT & T Employees' Benefit Committee, Defendants.

No. Civ.A. 1:98–CV–2198.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 13, 1999.

**1358**

Christopher David Adams, Adams & Alford, Athens, GA, Michael Owen Crain, Crain & Davis, Athens, GA, Pratt H. Davis, Crain & Davis, Atlanta, GA, for plaintiffs.

Charles Clark Jackson, Robert L. Jackson, III, Allegra R. Rich, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, pro hac vice, Peter Norbert Farley, John T. Murray, Seyfarth, Shaw, Fairweather & Geraldson, Atlanta, GA, for defendants.

### MEMORANDUM OPINION & ORDER

STORY, District Judge.

Plaintiffs, both current and former employees of Defendant AT & T Corporation ["AT & T"], bring this proposed class action alleging Defendants violated the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1001 et seq. by excluding putative class members from participating in an early retirement program offered to certain AT & T managerial employees. Plaintiffs also bring related federal claims under the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. §§ 621, et seq. (1994) and the Older Worker Benefits Protection Act ["OWBPA"], 29 U.S.C. § 626.

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint [20-1], Plaintiffs' Motion for Leave to File Supplemental Brief in Response [26-1], Plaintiffs' Motion for Oral Argument [26-2], and Plaintiffs' Motion to Stay the Time Period for Filing Class Certification [26-3]. As a preliminary matter, Plaintiffs' Motion for Leave to File Supplemental Brief in Response [26-1] is **GRANTED** and Plaintiffs' Motion for Oral Argument [26-2] is **DENIED.** With regard to the remaining motions, after reviewing the entire record and considering all arguments of the parties, this Court enters the following Order.

### I. Factual Background

During a January 21, 1998 meeting, the AT & T Board of Directors took the first step in implementing a voluntary early retirement incentive program by amending the AT & T Management Pension Plan ["Plan"] through the adoption of a series of resolutions. The January resolutions provide, in pertinent part, as follows:

RESOLVED: that, effective January 1, 1998, the AT & T Management Pension Plan ("AT & TMPP") be amended to provide that an employee shall be eligible for benefits under a voluntary retirement incentive program for management ("VRIP") being offered during a limited window period from January 1, 1998 through December 31, 1998, inclusive, ... if ... (5) he or she is not part of a group of employees designated by the Company (as described in the directive to the Executive Vice Presi-

dent—Human Resources below) to be excluded from the VRIP....

(January Resolution Ex. at 1–2.) The "directive to the Executive Vice President" also included in the January resolutions provides, in part, as follows:

> RESOLVED: that the Executive Vice President—Human Resources (or his delegate), with the advice of the Law Department, is directed to study issues relating to the final design of the VRIP and to make recommendations for further Board approval of final specific plan design matters including, but not limited to, the following:
>
> (i) ...;
>
> (ii) determining whether, and to what extent, a limit should be imposed on the number of eligible employees in any group of employees;....

(*Id.* at 10.)

Two months later on March 18, 1998, the Board, by a series of resolutions, completed the VRIP Plan, and, in doing so, accepted the vice president's recommendation and limited the number of managers eligible to accept VRIP benefits within each employee group. The March resolutions provide, in pertinent part, as follows:

> RESOLVED: that, for the business reasons presented to the meeting, the number of employees in certain groups of employees who may be eligible for the VRIP shall not exceed the limits presented to the meeting;
>
> RESOLVED: that if, with respect to an employee group identified in the immediately preceding resolution, the number of employees who volunteer to leave the Company under the VRIP is greater than the limits set forth in the immediately preceding resolution, the determination of which employees within the employee group shall be eligible for the VRIP shall be in order of seniority based on the employees' term of employment as defined in the AT & T Management Pension Plan ("AT & TMP") for purposes of eligibility to retire.

(March Resolution Ex. at 2.) Application of these employee group eligibility limitations caused Defendants to reject the putative class members' applications for VRIP benefits. (Sec.Am.Comp. at ¶ 97.)

## II. Discussion

Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion, the Court may only look to the pleadings. Fed.R.Civ.Pro. 12(b). The pleadings are, in addition, construed broadly so that all facts pleaded therein are accepted as true and all inferences are viewed in a light most favorable to the nonmoving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). Thus, a motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Defendants argue their Exhibit A may be considered a part of the pleadings for purposes of the Motion to Dismiss because the March resolutions, filed with the Second Amended Complaint, incorporate by reference Exhibit A by stating "the number of employees in certain groups of employees who may be eligible for the VRIP shall not exceed the limits presented to the meeting." (March Resolution Ex. at 2.) Consistent with the March resolution, Defendants' Exhibit A sets forth limits on the number of employees within certain employee groups who may accept the VRIP offer, and it very well may be the same limits presented to the Board and adopted by the March resolution. But nothing in the text of the exhibit or in the text of the March resolutions indicate these are the same limits presented to the Board, and the Court cannot say with certainty the March resolutions incorporate by reference Defendants' Exhibit A. The Court will therefore not consider Exhibit A when ruling on Defendants' Motion to Dismiss.

## A. ERISA CLAIMS

### 1. Section 1054(g) Claim

Although the January and March resolutions expressly condition eligibility on whether an employee is excluded because of employee group eligibility limitations, Plaintiffs argue the January and March resolutions conferred upon the putative class members accrued VRIP benefits the limitations list subsequently took away. The employee group limitations list thus, according to Plaintiffs, constitutes a VRIP Plan amendment that eliminated the putative class members' VRIP early retirement benefits to which they were entitled under preamendment conditions in violation of 29 U.S.C. § 1054(g) (1999). "This provision, known as the 'anti-cutback' rule, was intended to prevent employers from 'pulling the rug out from under' employees participating in a plan." *Williams v. Cordis Corp.*, 30 F.3d 1429, 1431 (11th Cir.1994). As the Senate Report on § 1054(g) states, " 'the prohibition against reduction of a benefit subsidy ... applies to a participant *only if the participant meets the conditions imposed by the plan on the availability of the subsidy.*' " *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.*, 848 F.2d 1164, 1175 (11th Cir.1988) (quoting S.Rep. No. 575, 98th Cong., 2d Sess. 31 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2577 (emphasis added)). Because the putative class members never satisfied the conditions for VRIP eligibility set forth in the January and March Resolutions, Defendants never "pulled the rug out from under" the putative class members, and Plaintiffs' anti-cutback claim must be dismissed.

1. Any argument that the January resolutions constitute the VRIP Plan by themselves is meritless, as it is clear this was not the Board's intent. The January resolutions simply announced for the first time the upcoming offering of the VRIP Plan, set forth some of the eligibility and benefits information, and expressly left other matters to be resolved after further discussion. Plaintiffs argue the January resolutions constitute an ERISA Plan

The January and March Board resolutions amend the Plan to create, for the first time, the VRIP Plan, and, for this reason, Plaintiffs correctly treat these resolutions together as a benefits plan separate and distinct from the terms of the Pension Plan.[1] Plaintiffs contend they were entitled to VRIP benefits under the January and March resolutions and that the eligibility limitations list subsequently amended the VRIP Plan to restrict eligibility to a certain number of the most senior employees in each employee group. This contention, however, ignores the fact that both the January and March resolutions expressly condition eligibility on whether an employee is excluded because of employee group eligibility limitations.

The January resolutions provide, in pertinent part, that "an employee shall be eligible for benefits under [VRIP] ... if ... (5) he or she is not part of a group of employees designated by the Company (as described below) to be excluded from the VRIP...." (January Resolution Ex. at 1–2.) The resolutions subsequently direct the executive vice president of human resources to "determin[e] whether, and to what extent, a limit should be imposed on the number of eligible employees in any group of employees...." (*Id.* at 10.) Surely, then, Plaintiffs cannot look to the January resolutions by themselves and argue they satisfied all of the conditions for eligibility.

The March resolutions pick up where the January resolutions left off by imposing limits on the number of employees who are eligible for VRIP benefits within certain employee groups. Specifically, the March resolutions provide "that, for the business reasons presented to the meeting,

on their own because they "define[ ] the criteria necessary to be an 'eligible employee.' " (Pls.' Supp. Br. at 4.) This is simply not true. The January resolutions expressly leave open the question of who will and who will not be eligible to receive VRIP benefits and direct the human resources department to look into the matter further before the Board takes any action.

the number of employees in certain groups of employees who may be eligible for the VRIP shall not exceed the limits presented to the meeting." (March Resolution Ex. at 2.) If the number of employees within an employee group who wished to participate in VRIP exceeded these adopted limits, the March resolutions provided eligibility should be determined by "order of seniority based on the employees' term of employment. . . ." (*Id.*) The March resolutions thus offer even less support for Plaintiffs' contention that they satisfied conditions for VRIP eligibility under the VRIP Plan.

▮ Realizing the difficulty the aforementioned provisions of the January and March resolutions pose to their § 1054(g) claim, Plaintiffs wish to strike any reference to numerical limitations on employee groups in the March and January resolutions because the Board did not include the limitations list in its March resolution. In the Eleventh Circuit, material modifications or amendments to an ERISA plan "can be implemented or applied only after the amendment has been appropriately adopted in a formal, complete, and written form." *Smith v. National Credit Union Admin. Bd.*, 36 F.3d 1077, 1081 (11th Cir. 1994). Applying this rule, courts have struck material plan amendments or modifications made orally or by informal written communications. *See Smith*, 36 F.3d at 1080–81 (holding oral amendment to raise retirement age from sixty-two to sixty-five was ineffective and subsequently formalized, written amendment could not be applied retroactively); *Mohalley v. Kendall Health Care Prods. Co., Inc.*, 903 F.Supp. 1530, 1536–38 (M.D.Ga.1995) (concluding creation of two-tiered classification and premium contribution system by informal inter-office correspondence could not be considered document comprising portion of ERISA plan).

▮ The most obvious difficulty with Plaintiffs' argument is the limitations list did not modify or amend the January or March resolutions; instead it simply satisfied the January resolutions' requirement that such limitations be· explored and pro-

vided substance to the March resolutions' adoption of these limitations. This is not a case where the plan administrator attempted to amend key portions of the plan orally or by informal correspondence without ever bothering to formally amend the plan itself to reflect the changes. In stark contrast to *Smith* and *Kendall*, the Board in the case sub judice set forth every material amendment to the original Plan in its formal, written resolutions that erect the structure of the VRIP Plan, and both sets of resolutions make no secret of the fact eligibility would be limited within the employee groups. The March resolutions go even further by explaining eligibility determinations under the employee group limitations would be made based on seniority.

At most, one could argue the actual limitations list itself should be stricken as a material, informal, unwritten plan amendment or modification, but even this does not entitle the putative class members to relief under § 1054(g). As explained above, the putative class members still never satisfied the conditions for eligibility set forth in the January and March resolutions. In addition, without the list, a reasonable person could not, from the surrounding circumstances, ascertain the class of VRIP beneficiaries from the January and March resolutions, and the VRIP Plan would therefore fail to qualify as an ERISA employee pension benefit plan. *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1330 (11th Cir.1998). Without a valid ERISA plan, Plaintiffs' ERISA claims are subject to dismissal.

In a final effort to strike all mention of the employee group limitation from the VRIP Plan, Plaintiffs contend the absence of the limitations list in the January and March resolutions renders the requirement that participants fall outside the excluded group not "definitely determinable." This requirement, Plaintiffs argue, is therefore ineffective under Treasury Department regulations promulgated pursuant to 26 U.S.C. § 401(a) of the Internal

Revenue Code. The Court disagrees because, as the Fourth, Seventh, and Tenth Circuits have concluded, "the provisions of 26 U.S.C. § 401(a) and the regulations promulgated under them cannot form the basis of an ERISA action" because they relate solely to the issue of tax qualification under the Internal Revenue Code. *Stamper v. Total Petroleum, Inc.*, 188 F.3d 1233, 1237-1240 (1999). The specific Treasury Regulations Plaintiffs cite support this conclusion as they do not govern the extent to which modifications of an ERISA plan must convey detailed information regarding eligibility; instead, they require plans to set forth definitely determinable criteria for the calculation of benefits. *See, e.g.* 29 C.F.R. § 1.401–1(b) ("A pension plan within the meaning of section 401(a) is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement.")

### 2. Section 1104(1)(D) Claim

The Plan, like § 1054(g), prohibits the enactment of any amendment that divests participants of previously accrued rights or benefits. Plaintiffs claim Defendants violated this Plan provision and thus breached their duty under 29 U.S.C. § 1104(a)(1)(D) (1999) to abide by the Plan's provisions. As discussed in Part II.A.1. of this Order, however, Defendants did not divest the putative class members of any previously accrued rights under the VRIP Plan, and Plaintiffs' § 1104(a)(1)(D) claim must therefore be dismissed.

### 3. Misrepresentation Claim

■ Plaintiffs contend in their response brief that Defendants disseminated to the putative class members a series of "comprehensive, but grossly misleading, communications ... to induce them to leave AT & T's employment." These communications allegedly led Plaintiffs to believe they were eligible for VRIP benefits and caused them to apply for VRIP early retirement, only to have Defendants reject

their applications. The Second Amended Complaint allegations and exhibits attached thereto, however, clearly show Plaintiffs can prove no set of facts in support of this claim.

> To establish a claim for breach of fiduciary duty based on alleged misrepresentations or concealment of material information concerning coverage under a plan, the plaintiff must show: (1) the defendant was acting in a fiduciary capacity when it made the alleged misrepresentations or concealed information; (2) the defendant made a material misrepresentation or concealed material information; and (3) the plaintiff suffered injury as a result.

*Cerasoli v. Xomed, Inc.*, 47 F.Supp.2d 401, 405 (W.D.N.Y.1999) (citations omitted). The facts as presented in the Second Amended Complaint and its exhibits satisfy the first factor, but Plaintiffs have failed to allege any misrepresentation or concealment of material information or any detrimental reliance that caused them to suffer damages.

■ Plaintiffs allege Defendants placed misrepresentations concerning the putative class members' eligibility for VRIP benefits in: (1) the VRIP Summary section of AT & T's web site; (2) the VRIP Package Instructions; (3) the VRIP benefits guide; and (4) the VRIP Agreement. The Court has reviewed every exhibit to the Second Amended Complaint, however, and none of them promises that every AT & T manager who meets the first four criteria listed in the January resolutions will receive VRIP benefits. To the contrary, every document that discusses at any length the availability of VRIP benefits contains at least one statement informing managers limits may be imposed on the number of managers eligible to accept VRIP benefits, and none of the documents contain any promise VRIP benefits will be offered to every manager. *See* Armstrong Announcement ("The [VRIP] Program will be offered to *most* A–D band managers in *most* of the business.") (emphasis added);

February VRIP Overview (explaining that VRIP applies to all managers who meet all other criteria and "are not a part of a group of employees excluded from the program"); Web site VRIP Information ("The [VRIP] Program will be offered to *most* A–D band managers in *most* of the business.") (emphasis added); VRIP Offer Letter (encouraging recipient to read enclosed VRIP package carefully); VRIP Calculations ("Because your employee group is subject to a limit on the number of employees who may terminate under the VRIP, you will be informed no later than June 15, 1998, about whether or not you will be permitted to terminate under the VRIP.").

In addition, even if Defendants did inform the putative class members there would be no limits on the number of managers eligible to accept VRIP benefits, the putative class members could not have suffered any injury as a result of their reliance on such a misrepresentation. Plaintiffs did not quit their jobs in reliance on statements by Defendants they would be eligible for VRIP benefits. Instead, they simply filled out an application for VRIP early retirement benefits Defendants rejected.

**4. Section 1054(h) Claim**

Plaintiffs contend the list of employee group eligibility limitations amended the January and March resolutions to "provide for a significant reduction in the rate of future benefit accrual" so that written notice should have been sent to all participants pursuant to 29 U.S.C. § 1054(h) (1999). But, as discussed in Part II.A.1. of this Order, the list of employee group eligibility limitations does not amend the VRIP Plan to eliminate any accrued VRIP benefits of the putative class members. Plaintiffs' § 1054(h) claim is therefore dismissed.

**B. Age Discrimination Claims**

Plaintiffs bring a disparate treatment claim and a disparate impact claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.

alleging application of the caps under the VRIP Plan "constitutes intentional age discrimination under the [ADEA]" and "had a disparate impact on those applicants over the age of forty [40] not otherwise justified by business necessity." (Sec.Am.Compl. at ¶¶ 129, 132.) For the reasons expressed below, the Court concludes Plaintiffs can prove no set of facts in support of these claims, and they are therefore dismissed.

The most obvious problem with Plaintiffs' age discrimination claims based on application of the eligibility limitations as set forth in the VRIP Plan is the VRIP Plan does not treat older employees less favorably by denying them VRIP benefits in favor of younger employees. Quite the contrary, the VRIP Plan actually treats older employees more favorably by providing that

> if, with respect to an employee group identified in the immediately preceding resolution, the number of employees who volunteer to leave the Company under the VRIP is greater than the limits set forth in the immediately preceding resolution, the determination of which employees within the employee group shall be eligible for the VRIP shall be in order of seniority based on the employees' term of employment as defined in the AT & T Management Pension Plan ("AT & TMP") for purposes of eligibility to retire.

(March Resolution Ex. at 2.)

**1. Disparate Treatment**

▮ As stated above, Defendants determined which employees within employee groups would be excluded by application of the eligibility limitations by "order of seniority based on the employees' term of employment...." (March Resolution Ex. at 2.) Even assuming consideration of the seniority factor caused applicants over the age of forty to be treated less favorably under the VRIP Plan, employee decisions based on years of service do not constitute age discrimination. The Supreme Court has held that "[b]ecause age and years of

service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.' " *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993). Although Plaintiffs allege Defendants sometimes used factors other than seniority when applying the eligibility limitations, the only example given is that "some business managers decided to limit the participation of employees within their particular units to the top fifteen (15) percent based upon seniority." (Sec.Am.Compl. at ¶ 98.) The Court sees no distinction, however, because application of the eligibility limitations in this example is still based on seniority and not age. As Defendants point out, "[n]otably absent from the complaint, however, is any allegation that even one of the 247 named plaintiffs was denied the VRIP because of his or her age. This glaring omission defeats any claim of intentional age discrimination." (Defs.' Br. at 13.)

### 2. Disparate Impact

■ As Justice Kennedy explained in *Hazen Paper,* the Supreme Court has "not yet addressed the question whether [a disparate impact claim] is cognizable under the ADEA, and there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA." *Id.* at 618, 113 S.Ct. at 1710. The Eleventh Circuit has never expressly allowed disparate impact claims under the ADEA, and has reserved for another day a ruling on whether the ADEA permits such claims. *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1437 n. 17 (11th Cir. 1998). The Middle District of Alabama is the only court within the Eleventh Circuit to address the issue after *Hazen Paper,* and it agreed with the Tenth Circuit's conclusion in *Ellis v. United Airlines, Inc.,* 73 F.3d 999, 1007 (10th Cir.1996), *cert. denied,* 517 U.S. 1245, 116 S.Ct. 2500, 135 L.Ed.2d 191 (1996) that "the statutory language of the ADEA cannot support a disparate impact claim." *Davidson v. Quo-*

*rum Health Group, Inc.,* 1 F.Supp.2d 1321, 1326 (N.D.Ala.1997).

Including the Tenth Circuit, seven circuits have addressed the issue after *Hazen Paper.* Three agreed with the Tenth Circuit and concluded that disparate impact is not a viable theory of liability under the ADEA. *See Mullin v. Raytheon Co.,* 164 F.3d 696, 700–702 (1st Cir.1999); *E.E.O.C. v. Francis W. Parker School,* 41 F.3d 1073, 1076–78 (7th Cir.1994), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995). *See also DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 732–34 (3rd Cir.1995), *cert. denied,* 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995) (opining disparate impact is not viable theory of liability under ADEA, but reserving ruling on issue until another day). Three circuits have held to the contrary, but all "have done so in reliance on pre-*Hazen Paper* precedents and the law of the circuit doctrine." *Mullin,* 164 F.3d at 701. *See District Council 37 v. New York City Dep't of Parks & Recreation,* 113 F.3d 347, 351 (2d Cir.1997); *Houghton v. SIPCO, Inc.,* 38 F.3d 953, 958–59 (8th Cir.1994). *See also Lyon v. Ohio Educ. Assn. & Professional Staff,* 53 F.3d 135, 139 n. 5 (6th Cir.1995) ("There is considerable doubt as to whether a claim of age discrimination may exist under a disparate impact theory.... However, this circuit has stated that a disparate-impact theory of age discrimination may be possible.").

This Court has carefully studied the aforementioned opinions, finds the reasoning of the First, Third, Seventh, and Tenth Circuits persuasive, and therefore concludes "the imposition of disparate impact liability would not address the evils that Congress was attempting to purge when it enacted the ADEA." *Mullin,* 164 F.3d at 701. Plaintiffs' disparate impact claim is therefore dismissed.

### C. OWBPA Claim

■ The waiver agreement Plaintiffs signed is unenforceable because no consideration was provided and the condition

precedent that Defendants accept Plaintiffs' VRIP application was not satisfied. Plaintiffs nevertheless seek relief under 29 U.S.C. § 626(f)(1)(H) of the OWBPA alleging Defendants failed to make available to them certain information regarding the VRIP Plan so Plaintiffs could not have waived their claims knowingly and voluntarily. Because the waiver agreement is unenforceable, however, Plaintiffs have suffered no injuries as a result of any failure by Defendants to ensure they entered into the agreement knowingly and voluntarily. Plaintiffs therefore do not have standing to bring this claim, and it is dismissed. *See Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir.1994) (plaintiff must have suffered an actual or threatened injury to have standing). *See also Ellison v. Premier Salons Int'l, Inc.*, 164 F.3d 1111, 1115 (8th Cir.1999) ("Because Ellison has not waived his rights under the ADEA, and in fact has litigated his ADEA claim, he has not been denied the benefit of the OWBPA.").

### III.  Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss the Second Amended Complaint [20–1] is **GRANTED,** Plaintiffs' Motion for Leave to File Supplemental Brief in Response [26–1] is **GRANTED,** Plaintiffs' Motion for Oral Argument [26–2] is **DENIED,** and Plaintiffs' Motion to Stay the Time Period for Filing Class Certification [26–3] is **DENIED AS MOOT.**