_____

No. 95-4205
_____

William Jefferson,                    *
                                      *
          Appellant,                  *    Appeal from the United States
                                      *    District Court for the
     v.                               *    District of Nebraska.
                                      *
Vickers, Inc, a Delaware              *
Corporation, J. Steven                *
Whitworth,                            *
                                      *
          Appellees.                  *
                                      *

_____

Submitted: September 12, 1996

Filed: December 17, 1996
_____

Before FAGG, BEAM, and MURPHY, Circuit Judges.
_____

BEAM, Circuit Judge.


     In this appeal, an employment discrimination plaintiff
challenges the district court's[1] evidentiary rulings in his section
1981 jury trial and asserts error by the district court in finding
against him on his ERISA claims.  We affirm.


I.   BACKGROUND


     Vickers, Inc. employed William Jefferson, a black male, first
as a Business Analyst and later as a Product Planning and Analysis
Manager.  J. Steven Whitworth was Jefferson's supervisor for most
of Jefferson's employment.  Vickers downsized in 1993; Jefferson
was terminated as part of that reduction in force.  Jefferson

_____

[1]The Honorable Lyle E. Strom, United States District Judge,
District of Nebraska.

participated in two pension plans while at Vickers: the Vickers, Inc. Retirement Program Part A[2] "the Part A Plan") and the Vickers, Inc. Retirement Savings and Profit Sharing Plan[3] ("the 401(k) Plan"). The 401(k) Plan requires that employees serve five years in order to vest in employer contributions to their accounts. When he was discharged, Jefferson had been employed at Vickers for four years, eight months and fifteen days. Jefferson asked if he could vest despite falling short of five years of service. Vickers offered to extend Jefferson's severance benefits until after the vesting date which would enable Jefferson to become fully vested. In exchange for that accommodation, however, Vickers required Jefferson's release of any and all claims against the company. Jefferson refused to sign the release and filed suit alleging race discrimination in violation of 42 U.S.C. § 1981 and interference with rights protected by section 510 of the Employee Retirement Security Act (ERISA), codified at 29 U.S.C. § 1140.

The section 1981 claim was tried to a jury. Jefferson sought to introduce evidence regarding the ERISA claims on the theory that non-minority employees had been allowed to extend their severance benefits without signing any release. The district court sustained a motion in limine seeking to exclude the alleged ERISA violations (such as the offered release) under Federal Rule of Evidence 403. The jury returned verdicts in favor of Vickers and Whitworth on April 25, 1995.

The ERISA claim was tried to the court. The court found that Jefferson was vested in the Part A Plan and awarded him $853.69 as

---

[2] This plan was discontinued while Jefferson was employed at Vickers. Plan documents called for automatic vesting of participants upon termination.

[3] Section 401(k) plans (also known as cash-or-deferred arrangements or CODAs) allow participants to have a portion of their pre-tax earnings contributed to retirement savings. Vickers' plan provided that the employer match employees' contributions.

his interest in that plan.[4]  The court further found that Jefferson was not vested in the 401(k) Plan.  On Jefferson's claims of discrimination under section 510 of ERISA, the court concluded that Vickers had not intentionally interfered with Jefferson's attainment of benefits and entered judgment in favor of the defendants.

Jefferson moved for judgment notwithstanding the jury's verdict or, in the alternative, for a new trial.  The district court denied both motions, and Jefferson initiated this appeal.  He argues that Vickers' proposed settlement that required him to release claims in exchange for continuation of benefits violated ERISA and showed race discrimination.

## II.  DISCUSSION

### A.    Section 1981 Claim

Jefferson appeals the district court's exclusion of evidence regarding the alleged ERISA violation.  Specifically, the court refused to admit the release Vickers offered in exchange for an extension of benefits.  We review evidentiary decisions very deferentially, reversing only upon a showing that the trial court has "clearly abused its discretion." United States v. Johnson, 857 F.2d 500, 501 (8th Cir. 1988).

ERISA claims are properly tried to the court. Houghton v. SIPCO, Inc., 38 F.3d 953, 957 (8th Cir. 1994).  The district court determined that evidence of unrelated ERISA claims in the section 1981 trial would have created a trial within a trial, diverting the jury's attention from the race discrimination claim.  We cannot say the district court abused its discretion in excluding the release from the section 1981 trial.

---

[4]That award has not been appealed.

While it may be relevant to a claim of discrimination that a minority employee was required to execute a release while others were not, Jefferson has not presented that kind of evidence here. Jefferson's offer of proof failed to offer any evidence that Vickers' request was unique to Jefferson or to minority employees. The testimony indicated that this was a standard release used by the Vickers human resources department, and that no employee had received extended severance benefits without executing a release. The district court did not err in excluding the release from the section 1981 case.

**B.    ERISA Claim**

Jefferson first claims that he was vested in the 401(k) Plan and that Vickers violated ERISA by refusing to pay out the benefits.  In the alternative, he argues that Vickers violated ERISA by discharging him with the intent to prevent him from vesting.

**1.    Vested Status in 401(k) Plan**

The district court found that Jefferson was not fully vested in Vickers' 401(k) Plan at the time of his termination. This finding constitutes a conclusion of law.  John Morrell & Co. v. United Food and Commercial Workers Int'l Union, 37 F.3d 1302, 1303 (8th Cir. 1994), cert. denied, 115 S. Ct. 2251 (1995).  It is therefore reviewed de novo.  Sawheny v. Pioneer Hi-Bred Int'l, Inc., 93 F.3d 1401, 1407 (8th Cir. 1996).

Under the terms of ERISA, a "vested right" is one that is "nonforfeitable."  See, e.g., 26 U.S.C. § 411(a)(2).  Vickers' 401(k) Plan required employees to have five years of service with the company before vesting.  There is no dispute that at the time of Jefferson's termination, he had worked for Vickers for four years, eight months and fifteen days.  Since Jefferson had not

completed five years of service, he had not vested and therefore forfeited the employer contributions to his 401(k) account.

Jefferson argues that the Vickers plan does not meet the minimum vesting standards set by Congress. Section 203(b)(2)(A) of ERISA provides:

> [T]he term "year of service" means a calendar year, plan year, or other 12-consecutive month period designated by the Plan . . . during which the participant has completed 1,000 hours of service.

29 U.S.C. § 1053(b)(2)(A).

Jefferson's position is that under the latter provision, if a participant completed 1000 hours of service in the "12-consecutive month period designated by the Plan," he or she would accrue one year of service for vesting purposes. Jefferson argues that he is entitled to credit for a year of service even though he was not employed for an entire twelve-consecutive month period because he had performed over 1000 hours of service since his last employment anniversary date. In essence, Jefferson contends that ERISA itself requires qualified pension plans to determine vesting by calculating an employee's hours of service rather than the time elapsed since employment.

This argument ignores the Treasury Regulations which expressly allow use of the elapsed-time method. See 26 C.F.R. § 1.410(a)-7. The argument Jefferson makes here has already been rejected. "ERISA was a carefully considered statute, and if its framers had intended to wipe out the elapsed-time method of computing pension entitlements we think they would have chosen a more conspicuous method than the obscure wording of the definitional provision on which [the plaintiff] relies." Coleman v. Interco Inc. Divisions' Plans, 933 F.2d 550, 552 (7th Cir. 1991). We agree. We conclude that ERISA allows vesting to be calculated by either the hours of

service method or the elapsed-time method. The Vickers plan had selected the elapsed-time method, and Jefferson had not fulfilled the plan's vesting requirements.

## 2. Intentional Interference Under Section 510

The district court found that Vickers had not discharged Jefferson with the intent to interfere with his pension rights. It therefore entered judgment in favor of the defendants on Jefferson's section 510 claim. Jefferson asserts this finding was erroneous.

Claims brought under section 510 of ERISA are analyzed under the three-stage burden-shifting paradigm articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Rath v. Selection Research, Inc., 978 F.2d 1087, 1089-90 (8th Cir. 1992). The district court found that Jefferson had established a prima facie case of discrimination under McDonnell Douglas, thus creating a presumption of discrimination. The court went on to find that Vickers had rebutted that presumption by articulating a legitimate, non-discriminatory reason for Jefferson's discharge in that it was undergoing a reduction in force. Jefferson does not challenge that finding on appeal.

Section 510 plaintiffs are "required to present evidence that [an employer] acted with "specific intent" to interfere with their rights" to overcome an employer's legitimate, non-discriminatory reason. Brandis v. Kaiser Aluminum & Chemical Corp., 47 F.3d 947, 950 (8th Cir. 1995). This specific intent can be shown with circumstantial evidence, but must be more specific than mere conjecture. Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 456 (8th Cir. 1995). Jefferson has failed to adduce this evidence of intent.

Jefferson relies on three facts to establish specific intent. First, he argues that Vickers' offer to extend his benefits in exchange for a release is evidence of intentional interference. An employer does not violate ERISA when it conditions the receipt of early retirement benefits upon the participants' waiver of employment claims. Lockheed Corp. v. Spink, 116 S. Ct. 1783, 1791 (1996). The requested release alone does not establish the intent to violate ERISA.

Second, Jefferson argues that Vickers' intent is demonstrated by the extensions granted other employees who did not execute a release. As noted above, Jefferson submitted no evidence to support his assertion that other employees received extensions without executing releases. Furthermore, even if proven, the incidents would not impose section 510 liability. As the court in McGath v. Auto-Body North Shore, Inc., 7 F.3d 665 (7th Cir. 1993) explained:

> Because the plan must be administered according to its terms, [plaintiff] cannot complain because he is held to those terms; <u>this is true even if the rules were bent for another individual</u>. ERISA § 510 affords protection from discrimination that interferes "with the attainment of any right to which such participant may become entitled under the plan." [Plaintiff] does not have a right to treatment that is contrary to the terms of the plan, <u>even if those terms are breached for others</u>.

Id. at 670 (emphasis added) (footnote omitted). Vickers offered to allow Jefferson to vest in benefits to which he was not legally entitled. An employer does not violate ERISA by offering a gratuity to one employee that is less generous than a gratuity bestowed on another. Such an offer itself does not establish intentional interference with ERISA rights.

Finally, Jefferson claims that Vickers' refusal to pay his (now admittedly) vested Part "A" Plan benefits is evidence of

intent to interfere with his pension rights.  Jefferson offers no evidence on this point other than Vickers' failure to pay.  Were this evidence alone enough to state a claim under section 510, every error in determining entitlement to benefits would be actionable under section 510.  That is clearly not the purpose of this section of ERISA.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.