# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-1092

_____

| | | |
|---|---|---|
| Kenneth Eckert, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| Titan Tire Corporation; Titan Tire | * | |
| Corporation, Employee's Pension Plan; | * | |
| Pirelli Tire, LLC, | * | |
| | * | Appeal from the United States |
| Defendants, | * | District Court for the |
| | * | Southern District of Iowa. |
| ----------------------------- | * | |
| | * | |
| Titan Tire Corporation; Titan Tire | * | |
| Corporation, Employee's Pension Plan, | * | |
| | * | |
| Third Party Plaintiffs - | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Pirelli Tire, LLC, | * | |
| | * | |
| Third Party Defendant - | * | |
| Appellee. | * | |

_____

Submitted: October 15, 2007
Filed: January 29, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Kenneth Eckert brought this lawsuit against Titan Tire Corporation and Titan Tire Corporation Pension Plan (collectively "Titan"), claiming that Titan miscalculated the amount of pension benefits he was entitled to receive. Titan brought a third-party claim against Pirelli Tire, L.L.C. ("Pirelli"), claiming that Pirelli was responsible for the miscalculation and that Pirelli should indemnify Titan. Titan and Eckert settled Eckert's claim. On Titan's third-party claim against Pirelli, the district court[1] held that Pirelli was not required to indemnify Titan for the miscalculation of Eckert's pension benefits. For the reasons discussed below, we affirm.

## I. BACKGROUND

Pursuant to an Asset Purchase Agreement ("APA") dated July 16, 1994, Titan Tire Corporation purchased Pirelli's Des Moines, Iowa tire manufacturing and production plant from Pirelli. Under section 2.04(2) of the APA, Titan assumed the liability to cover Pirelli's obligations for retirement benefits to former Pirelli employees who were continuing in employment with Titan, but Pirelli remained liable for retirement benefits accrued by the employees before Titan's purchase of the plant. To cover Pirelli's liabilities to the employees, section 13.01(3)(a)(iii) of the APA required Pirelli to transfer assets to Titan sufficient to cover Pirelli's pension liability, the "pension amount." Section 13.01(3)(a)(iv) defined the "pension amount" as an amount equal to the actuarial present value of the vested accrued benefits.

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

In section 5 of the APA, labeled "Representations and Warranties," the parties acknowledged that the representations made under section 5 were "correct and complete in all material respects" and would be "correct and complete in all material respects as of" July 16, 1994, the effective date of the APA. In section 5.18(1)(B), Pirelli represented and warranted that, "[w]ith respect to each Employee Pension Benefit Plan listed in Section 5.18 of the Disclosure Schedule, [Pirelli] has delivered or made available to [Titan] correct and complete copies of . . . actuarial valuations and audited financial statements for the most recent plan year."

According to the testimony of William Hogan, an actuary engaged by Titan, Pirelli's actuaries provided him with "a data file in electronic format which held individual participant information, names, date of birth, date of hires, pay, [and] accrued benefits." The file contained the individual participant records "determining for each individual person what the likely cost of the pension is going to be and the present value of that cost today," which was then "summed up to get a total cost for all participants." Using the data provided by Pirelli's actuaries, Hogan prepared his own calculations using his firm's systems to determine if his actuarial valuations "would come reasonably close to the calculations" provided by Pirelli's actuaries. Hogan did not check the correctness of the underlying data as to each individual participant but instead checked the actuarial calculations to ensure that Pirelli's actuarial calculations were correct. However, Pirelli's actuarial valuations relied on the incorrect starting date for Eckert of March 9, 1987, instead of his correct starting date of February 12, 1970. As a result, the actuarial valuations provided by Pirelli's actuaries were incorrect. Only after Eckert filed his complaint did Titan examine the actuarial valuations Pirelli had provided and realize that it relied on an incorrect hire date for Eckert. The parties determined that the amount Pirelli transferred to Titan was $37,520 less than its true pension liability.

Section 9 of the APA limited the time during which either party could bring a claim for breach of a representation or warranty under section 5 and stated that "[t]he

representations and warranties of the parties under Section[] 5 . . . hereof and the right to make a claim for indemnification hereunder for breaches of representations and warranties or otherwise with respect thereto shall survive only for a period of one (1) year after the Closing Date." Therefore, under section 9, the parties had one year from the closing date to file a claim for breach of any section 5 representations and warranties. Titan does not dispute that it filed its claim against Pirelli more than one year after the closing date.

The transaction closed on August 11, 1994, and in August 1996, Pirelli transferred approximately $55,000,000 of assets to Titan pursuant to Pirelli's obligation to transfer the pension amount under section 13 of the APA. Pirelli made a second transfer of approximately $828,000 on December 31, 1998. In 2003, Eckert filed suit against Titan seeking the full amount of the pension benefits he had earned. Titan filed a third-party complaint against Pirelli, claiming that Pirelli was responsible for the miscalculation and seeking indemnification based on the APA. Titan also argues that it is entitled to relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., but Pirelli argues that Titan failed to plead an ERISA claim. Titan settled Eckert's claims before trial but continued to pursue its third-party claims against Pirelli. After a bench trial, the district court entered judgment in favor of Pirelli, finding that Titan had not adequately pled its ERISA claim and had failed to bring its breach of contract claim within one year as required by the APA's limitations provision. Titan appeals both rulings. We affirm.

## II. DISCUSSION

When the district court conducts a bench trial as it did here, we review the district court's fact finding for clear error, and we review legal conclusions and mixed questions of law and fact de novo. *See* Fed. R. Civ. P. 52(a); *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 774 (8th Cir. 2004).

All claims under the APA are "governed by and construed in accordance with the domestic laws of the State of Illinois." Section 15.07. Therefore, we must apply Illinois law in interpreting the APA, including whether section 9's one-year limitations period bars Titan's breach of contract claim. *See, e.g.*, *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687-89 (8th Cir. 2001). Under Illinois law, "[t]he primary objective in construing a contract is to determine and give effect to the intention of the parties at the time they entered into the contract." *K's Merch. Mart, Inc. v. Northgate Ltd. P'ship*, 835 N.E.2d 965, 970 (Ill. App. Ct. 2005); *see also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). In reaching that objective, "[t]he language used in the contract generally is the best indication of the parties' intent." *K's Merch. Mart*, 835 N.E.2d at 971. Here, the plain language of section 9 makes it clear that the parties sought to require that claims for breaches of representations and warranties under section 5 be brought within one year of the close of the transaction. *See Vill. of Lake In The Hills v. Ill. Emcasco Ins. Co.*, 506 N.E.2d 681, 683 (Ill. App. Ct. 1987) ("Parties to a contract may validly agree to set a reasonable time limit within which a suit on the contract must be filed.").

While a contract's plain language is the best indication of the parties' intent, "[t]he contract must be construed as a whole, taking into account the overall purpose of the contract, and the context in which the language is used." *K's Merch. Mart*, 835 N.E.2d at 971. Section 9 of the APA states that the representations and warranties under section 5 and the right to make a claim for a breach of the representations and warranties survive only one year after the closing date. Pirelli argues that Titan's claim rests on a breach of Pirelli's section 5 representation and warranty that it would provide correct actuarial valuations for the pension plans. If so, Titan cannot succeed on its claim for indemnification because it filed its claim more than a year after the closing date, and section 9 bars the claim. Titan, however, argues that Pirelli actually violated section 13, to which section 9's one-year limitation does not apply. Section 13 of the APA required Pirelli to transfer to Titan the pension amount as defined in section 13.01(3)(a)(iv), and Titan argues that Pirelli failed to transfer the correct pension amount.

Underlying Titan's argument that Pirelli failed to transfer the correct pension amount is the claim that Pirelli provided Titan with inaccurate actuarial valuations of the pension plans. In section 5.18(1)(B), Pirelli warranted that it was providing Titan with correct actuarial valuations, which it failed to do. Titan's argument that Pirelli failed to transfer the pension amount under section 13.01 rests on the fact that Pirelli provided inaccurate actuarial valuations as required in section 5.

As Titan's actuary Hogan testified, Pirelli's actuaries transferred a data file to him containing the names, dates of birth, dates of hire, pay and the present value of the accrued benefits for each employee covered by the pension plan. The present value of the accrued benefits for each employee was then summed up for all employees resulting in the actuarial valuations of the pension plans, an accurate version of which Pirelli was required to provide under section 5.18(1)(B) of the APA. Under section 5.18(1)(B), Pirelli warranted that it would provide the "correct . . . actuarial valuations." Because Eckert's date of hire was incorrect, the actuarial valuations Pirelli provided were incorrect. By providing incorrect actuarial valuations, Pirelli breached its representation and warranty under section 5 of the APA.

Using the data Pirelli provided, Pirelli and Titan both calculated the pension amount and Pirelli transferred to Titan assets equal to the calculated pension amount, meeting its duty under section 13.01(3)(a)(iii). Had Pirelli not transferred *any* assets to cover the pension amount or had it transferred an amount less than the calculated pension amount, it would have breached section 13.01, which required Pirelli to transfer the calculated pension amount to Titan. Titan does not argue either that Pirelli failed to transfer any assets to cover the pension amount or that Pirelli transferred less than the calculated pension amount. In fact, Pirelli did transfer funds equal to the pension amount under section 13.01 as determined by its actuaries; it simply transferred the incorrect amount based on its incorrect actuarial valuations. Under section 5, Pirelli had warranted those actuarial valuations were correct. Therefore, construing the contract as a whole, taking into account the overall purpose of the

contract and the context in which the language is used, we conclude that the incorrect actuarial valuations provided by Pirelli to Titan that resulted in the transfer of the incorrect pension amount constituted a breach of Pirelli's section 5 representation and warranty. Thus, section 9's one-year limitation bars Titan's breach of contract claim.[2]

Titan next argues that Pirelli violated ERISA by failing to transfer sufficient assets to fund the pension plan of a successor employer as required by ERISA. *See* 29 U.S.C. § 1058. The district court found that Titan had not properly pled this claim in its third-party complaint against Pirelli and declined to address Titan's arguments under ERISA.

In its third-party complaint, Titan invoked ERISA twice, both times within the section entitled "Parties, Jurisdiction, and Venue." The complaint stated that the pension plan was governed by ERISA and that the district court had jurisdiction over the case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction) and 29 U.S.C. § 1132(e) (giving federal courts jurisdiction to hear claims arising under ERISA). In its complaint, Titan failed to include an ERISA claim as a separate count, failed to invoke ERISA as part of its claim for relief and

---

[2]At oral argument, Titan argued for the first time that it would be illogical for section 9's one-year limitation to apply because the pension amount was not transferred until 1996, more than one year after the closing date of the APA, and that therefore it could not possibly have brought its claim within one year. However, because Titan did not make this argument in its brief, it is waived. *See Gebrasadik v. Gonzalez*, 491 F.3d 846, 851 n.6 (8th Cir. 2007). In any event, we do not see any inconsistency. Put simply, the APA allowed Titan one year to verify the accuracy of the actuarial valuations which determined the pension amount to be transferred under section 13. Indeed, had Titan or its actuaries simply compared the correct start date for Eckert contained in a list of employees attached to the APA pursuant to section 5.17 with the incorrect start date in the electronic data file Pirelli's actuaries provided to Titan's actuaries, Titan could have easily discovered the error that caused the actuarial valuations to be inaccurate.

failed to do anything indicating its intent to pursue a claim based on ERISA beyond merely citing the jurisdictional provision of the statute.

The federal rule that governs pleadings requires only that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must provide "fair notice of the plaintiff's claim and grounds for relief." *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *see also Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974). Furthermore, a court should construe the complaint liberally in the light most favorable to the plaintiff. *See Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866, 867 (8th Cir. 2005). Nonetheless, the complaint must still provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. ---, 127 S. Ct. 1955, 1964-65 (2007) (internal citation omitted) (alteration in original).

The district court found that Titan's claim failed to "provide specificity sufficient to give Pirelli notice that Titan [sought] relief pursuant to ERISA. Even in a notice pleading system, a plaintiff, whether third-party or otherwise, must give the defendant fair notice of the basis for the relief it seeks. Titan did not properly plead an ERISA claim." *Eckert v. Titan Tire Corp.*, No. 03-30689, slip. op. at 7 (S.D. Iowa Dec. 12, 2006). The district court concluded that because Titan did not mention an ERISA violation in its third-party complaint that sought relief only on the basis that Pirelli violated the APA by failing to transfer the correct pension amount, the complaint failed to give Pirelli notice of Titan's ERISA claim.

We agree with the district court. Simply invoking ERISA in the jurisdictional section of the complaint was insufficient to give Pirelli notice of Titan's claim and the grounds upon which it rested. While a party is not necessarily required to identify a

specific statute in its complaint, *see, e.g.*, *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004); *Northrup v. Hoffman of Simsbury, Inc*., 134 F.3d 41, 45-46 (2d Cir. 1997), a complaint must still provide fair notice of the claim, *see Conley*, 355 U.S. at 47. To provide fair notice to Pirelli, Titan was required to provide sufficient notice that it was seeking relief or making a claim based on ERISA. Just as "the standing component of jurisdiction is not satisfied merely by citing the federal statute defendant has allegedly violated," *Gardner v. First American Title Insurance Co*., 294 F.3d 991, 994 (8th Cir. 2002), the fair notice component of a complaint is not satisfied merely by citing the statute's jurisdictional provision within the complaint's jurisdictional section. While Rule 8(a) requires very little, it does require fair notice of the claim and the grounds upon which the claim rest. In its complaint, Titan failed to give such notice.

## III.  CONCLUSION

Accordingly, we affirm the district court.

_____