# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2439

_____

Cynthia Beckler, formerly known as Cynthia Roers

*Plaintiff - Appellant*

v.

Bank of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 13, 2018
Filed: January 30, 2019
[Unpublished]

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

This is an appeal from a bench trial in a quiet-title action challenging the validity of three mortgages held by Bank of America. The district court[1]

_____

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

concluded that the mortgages were properly executed and enforceable, and we affirm.

Cynthia Beckler married Alan Roers in 2005. At the time, she owned three properties: one located on Kingswood Road in Minnetrista, Minnesota, and two others on Benton Avenue in Edina, Minnesota. The couple initially lived together at the Kingswood Road property, which Beckler conveyed to Roers to create joint ownership.

A few months later, the couple decided to purchase a new home on a forty-acre ranch. After negotiations ended, Roers signed a purchase agreement for just over four million dollars, but he could not obtain financing without Beckler's help. She conveyed the Benton Avenue properties to Roers, again creating joint ownership, and then used the equity in all three properties as collateral. To complete the transaction, Beckler signed forms granting Roers's attorney the power to enter into mortgages on the couple's behalf. The end result was that the couple owned the ranch and had taken out mortgages on the Kingswood Road and Benton Avenue properties totaling over $1.1 million.

Beckler, now divorced from Roers, seeks to unwind these transactions. She brought a quiet-title action against Bank of America, which holds the mortgages on the three properties, and claimed that Roers forged her signatures on the deeds and power-of-attorney forms and then pressured a notary to certify them without her present. The district court held a bench trial, found that the signatures were authentic and properly notarized, and granted judgment to Bank of America.

We review a district court's factual findings for clear error. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 804 (8th Cir. 2008). Under this deferential standard of review, we will reverse only if we have a "definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted). Our deference is "even greater" when, as in this

case, the court relied on "determinations regarding the credibility of witnesses," because only it can see and hear "the variations in demeanor and tone of voice that bear so heavily on" credibility. *Id.* at 575.

The district court did not clearly err when it found that the signatures were authentic. In other legal proceedings, Beckler has acknowledged the mortgages and even framed her legal theories around them. In 2007, for example, the couple sued in state court on the ground that the seller had allegedly misrepresented the ranch's lot size. During a hearing, Beckler testified that mortgages were put on the Kingswood and Benton Avenue properties. The couple's 2009 divorce decree likewise stated that Beckler "contributed $1,150,000 of her nonmarital property to the down payment on the [ranch] by obtaining a mortgage on her nonmarital real property." Finally, in a 2010 federal lawsuit brought by Beckler and Roers, the complaint stated that Beckler "*decided* to place a mortgage on her two nonmarital properties in order to qualify [for] financ[ing]." (Emphasis added). This history casts doubt on Beckler's newest theory and provides ample support for the court's finding.

The district court also did not clearly err when it found that the signatures were properly notarized. At trial, the notary testified that his "signature and . . . stamp" were on the documents. And although he could not specifically remember, over ten years later, whether Beckler had signed the documents in his presence, he could think of no "reason why [he] would not have followed [his normal notarization] process . . . with regard to [the] document[s]." The court explicitly credited this testimony, and Beckler points to no evidence that demands a contrary conclusion. *See id.*; *see also id.* at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Beckler points to evidence supporting her claims, to be sure, but nothing creates a "definite and firm conviction that a mistake has been committed." *Id.* at 573 (citation omitted). For example, Beckler stresses that Roers admitted at trial

that he forged the documents. But the district court did not believe Roers, and we owe "great[] deference" to the court's observations of his "demeanor and tone of voice." *Id.* at 575. Plus, the court had other reasons to be skeptical of Roers, a self-proclaimed fraudster who, along with Beckler, had already challenged the purchase from different angles over multiple rounds of litigation.

Beckler's other arguments run the gamut from unpersuasive to misleading. She asserts, for instance, that she could not have been with the notary on the day the documents were signed because she had a doctor's appointment, but she fails to explain how the appointment prevented her from signing them in the notary's presence earlier or later in the day. Beckler also argues that her "handwriting sample" does not match the signatures on the documents, which in her view proves fraud. It is true that the handwriting sample bears little resemblance to her signatures on the documents, but her argument is deceptive because the sample, which is in block print and was made in anticipation of litigation, is not her signature. Instead, Beckler's *actual* signatures, found on documents everyone agrees are genuine, look like the signatures she challenges here. This sleight-of-handwriting cannot get her the relief she seeks.

We affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurs in the judgment.

_____